## McAFEE vs. THE STATE OF GEORGIA.

1. The Law providing that the Superior Court for any county shall be holden on the fourth Monday in April, and the first Monday in May, if it occur that there are five Mondays in April, the Court may be holden during the week intervening between those commencing on the fourth Monday in April and the first Monday in May, without violation of Law.

2. The Law providing that, in the same county, the Judge of the Superior Court shall draw a panel of Grand Jurors, and a panel of Petit Jurors, for each week of the term of the Superior Court, does not disqualify a Juror from serving more than one week of the Term. It, at most, only confers a privilege of exemption, which may be waived. And if the same Jurors who served during the first week, voluntarily serve during a week intervening, as stated in the previous note, and a defendant in a criminal case consent to be tried during that week, and fail to challenge the array of Jurors when presented, a motion in arrest of Judgment after conviction, will not be sustained.

3. If a defendant on trial for stabbing, give in evidence, a previous difficulty or quarrel on the same day, to show a conspiracy of several to do him bodily harm, it is competent for the State to prove other incidents of the same previous difficulty, to the end that the Jury may the better understand the merits of the case.

4. In such a case it is no objection to the competency of a witness on the part of the State, or to his testimony, that he is one of the parties charged with conspiracy, and that his testimony tends to exculpate himself, if it rebut the conspiracy attempted to be proven.

5. Under an indictment for stabbing, if the evidence show that the prosecutor and defendant agreed to fight—the prosecutor being entirely unarmed, and the defendant commenced from the first to use a knife, stabbing the prosecutor at every blow—it is not a case of self-defence, and a verdict of guilty is sustained by the Law and the evidence.

6. In such a case, a motion for a new trial, on the ground of newly discovered evidence, is properly refused, if it appear, first, that two of the witnesses whose evidence is alleged to have been newly discovered were subpoenaed by the defendant, and in attendance, and that the third proves the same facts as they—due diligence not having been shown; secondly, that the newly discovered evidence is only cumulative; thirdly, that their knowledge, showing a conspiracy had not been communicated to the defendant before the stabbing; fourthly, that the newly discovered evidence would not, probably, and should not have varied the result.

Indictment for stabbing, in Whitfied Superior Court. Tried before Judge Walker, at the April Term, 1860.

Juan McAfee was indicted in the Superior Court of Whitfield county, for the offence of stabbing William O. Fincher.

**JURORS—SEPARATE PANELS FOR EACH WEEK.** "Where an act of the legislature requires the court to continue in session for more than one week, it is the **duty of the judge to summon separate panels of jurors for each week;** as in Cochran v. State, 113 Ga. 726, 733, where it appeared by the Act of 1874 (Acts 1874, p. 42) that the superior court of Campbell county should be held not less than two weeks during each term, unless the business of the court should be sooner completed. Penal Code, §862. **But the requirement for separate panels does not apply to an adjourned or extra session.** McAfee v. State, 31 Ga. 411; Brinkley v. State, 54 Ga. 371 (6); Civil Code, §4345. In Bridges v. State, 103 Ga. 21 (2), the talesmen were not regularly or properly drawn. Here they were." Cribb v. State, 118 Ga. 318.

The defendant was put upon his trial on the 4th day of May, during the week intervening the fourth Monday in April and the first Monday in May, 1860.

The testimony adduced on the trial in the Court below, developed the following facts, to wit:

On the 29th day of February, 1860, at the town of Dalton, in the county of Whitfield, William O. Fincher (the party stabbed) and William Fincher, and a man by the name of Fuller, were in the act of starting home—it being near sundown. The defendant was standing a little distance off from the group made up of the said two Finchers and Fuller, when Fuller, who was very drunk, either run up, or staggered up against the defendant. The defendant pushed Fuller off. William O. Fincher walked up close to where defendant and Fuller were, and asked Fuller if he was going to take that (meaning the push by defendant). Defendant asked William O. Fincher if he took it up? to which Fincher replied that he had as soon as not. Defendant then said, "here's at you," and commenced pulling off his coat, and did pull it off. Defendant and William O. Fincher made at each other, met, and both struck about the same time—Fincher having no weapon of any kind, and striking with his fist alone, whilst defendant struck with his knife. The first lick made by defendant, with his knife, inflicted a wound on the left side of Fincher's breast, just below the collarbone. The second lick made by defendant, with the knife, inflicted a stab just under the breast bone of Fincher, about the pit of the stomach, and rather to the right side. The third lick cut the left arm of Fincher, just below the elbow. The fourth lick cut the upper portion of Fincher's right arm about midway between the wrist and elbow. Fincher's clothes were cut in another place, which did not reach the skin. The wind would issue from both wounds on the breast as Fincher would breathe. Fincher was unable to work from the time of the cutting up to the time of the trial, and was then unable to work, and could not ride on horseback without much pain. William O. Fincher testified that he did not see anything wrong in the defendant pushing off a drunk man when he staggered up against him, and when he asked Fuller if he was going to take that, he had no idea of getting into a difficulty, and did not know that the defendant and Fuller had anything against each other. Fincher had no weapon, and

**NEWLY DISCOVERED EVIDENCE — NEW TRIAL.** "The rule which authorizes a new trial to be granted for newly discovered evidence is stated in section 1061 of the Penal Code in the following language: "A **new trial may be granted** in all cases, **when** any material evidence, not merely cumulative in its character, but relating to new and material facts, shall be discovered by the applicant after the rendition of the verdict against him," etc.' Interpreting the rule thus stated,

did not expect to have any fight until defendant commenced pulling off his coat.

There was some testimony relative to a quarrel or difficulty between Fuller and defendant, and others, at a barber's shop on the same day of, but prior to the stabbing, in which there were threats made by Fuller and Wm. Fincher about whipping defendant, McAfee, and which has no connection with the fight between defendant and William O. Fincher. Some one gave defendant warning that some of the boys were after him to whip him.

Testimony relative to this previous quarrel or difficulty, was first offered and introduced by the defendant, to which the counsel for the State interposed no objection; and when counsel for the State offered to prove other and additional facts about said previous difficulty, the defendant's counsel objected.

The presiding Judge decided that all the testimony in relation to said previous difficulty, should be ruled out, or all admitted, at the option of counsel for defendant; and that if that portion offered by the State was objected to, he would rule out that portion offered by the defendant—and defendant excepted.

Some of the witnesses testified: That after the fight commenced between the defendant and William O. Fincher, some one in the large crowd standing around, threw a hammer, and some rocks, or brickbats, and that another Fincher had a knife drawn; but. that they (the witnesses) did not throw them.

To this defendant's counsel objected, on the ground that such testimony tended to excuse or exculpate the witnesses; which objection was overruled by the Court, and defendant excepted.

The testimony being closed, the presiding Judge charged the jury:

"The defendant is presumed to be innocent; and it devolves on the State to show, by proof, that he is guilty beyond a reasonable doubt, before he should be found guilty; and in the absence of such proof, he should be acquitted.— When the fact is proved that the defendant did the act of stabbing, this makes out the offence charged, unless it appears from the evidence that the stabbing was done by the defendant in his own defence. The defendant's counsel do not deny

this court has frequently declared that such applications are not favored, and are received with caution. Berry v. State, 10 Ga. 527; Clark v. Carter, 12 Ga. 500; McAfee v. State, 31 Ga. 412; Polite v. State, 78 Ga. 347. It must further appear that the evidence has come to the defendant's knowledge since the trial, and that it was not owing to the want of due diligence that he did not acquire it sooner." Dill v. State, 106 Ga. 689, 690.

(as I understand it) that the defendant did the cutting, but they insist that he did it in his own defence; and that is the question which you have to decide under the law and the facts proved. You are the judges, both of the law and the facts, and your verdict is a decision of all the questions, both of law and fact, involved in this case. Before you would be authorized to find the defendant guilty, your minds must be satisfied, from the evidence, of the defendant's guilt; and if your minds be so satisfied, then it is your duty to find the defendant guilty.

"This is an indictment for stabbing; and a general finding of guilty is, that the defendant is guilty of the offence charged.

"Under an indictment for stabbing, the jury may, if the evidence will warrant it, find the defendant guilty of an assault and battery, or an assault only; or, if no offence be proved to have been committed by defendant, then he should be found not guilty. Our Code declares that, 'any person who shall be guilty of the act of stabbing another, except in his own defence, with a sword, dirk, knife, or other instrument of like kind, shall, on conviction thereof, be punished,' etc. Battery is defined to be 'the unlawful beating of another,' and an assault is defined to be 'an attempt to commit a violent injury upon the person of another.' In this case it is insisted that the stabbing was done in self-defence. If it appears from the evidence that it was necessary for the defendant's defence at the time to stab William O. Fincher, then he is not guilty of stabbing. A man may protect his person by opposing force to force, but the force must not be disproportioned to the character of the injury threatened against his person. A battery with a man's fist will not justify one in defending himself with a knife, unless the use of the knife was absolutely necessary at the time, either to save his own life, or to prevent some great bodily injury being done to his person. A man has no right to use a knife, in order to prevent a person from whipping him with his fists, unless there should be a reasonable ground for the belief that the assailant was about to commit a serious personal injury upon him at the time. The party using a weapon, to be justifiable, must act under a reasonable apprehension that great bodily harm is about to be done him; otherwise he is not justifiable. If these parties proposed to go into a fight, and

McAfee, instead of a fair fight, met the other party and stabbed, and fought with a knife instead of his fist, and stabbed William O. Fincher; under this state of facts, you would be authorized to find the defendant guilty. If a party use a knife and cut another, it must appear that it was necessary for the purpose of preventing serious personal injury at the time, or the party so using the knife will be guilty of stabbing. If a party go into a fight with a knife drawn, pretending to be going into an ordinary fight—or, in other words, if two men go into a fight willingly, and one arms himself before going into the fight, and stabs his antagonist, this would be taking undue advantage, and would authorize the jury to find the party thus taking advantage guilty. If two parties enter into an equal contest, both willing to fight, and one prepare a knife and stab his antagonist, this would be a case of stabbing; because, under such a state of facts, the party would have no right to use such a weapon.

"The throwing of the hammer or brickbats after the stabbing—if they were so thrown—or the drawing of the knife by the other Fincher after the stabbing—if it was after the stabbing—affords no justification for the defendant stabbing William O. Fincher. Was the stabbing done, at the time it was done, necessary for McAfee's self-defence? If so, he was justified; otherwise, he was not. If, as the defendant insists, the rocks and hammer were thrown at him before the stabbing, this might justify the defendant, provided the proof shows that there was a common purpose among the parties (including William O. Fincher) to do the defendant some great bodily harm. This is all for your consideration. You are to determine, from all the testimony in the case, whether the defendant is guilty or not. I intimate no opinion as to what I may think has been proved in this case. The whole matter is for your determination; and as you think the testimony will authorize, so you will find."

The jury returned a verdict of guilty against the defendant.

Whereupon, counsel for the defendant moved to arrest the judgment in said case on the ground:

"That the defendant was tried on the 4th day of May, during the week immediately following the fifth Monday in April, and intervening between the fourth Monday in April and the first Monday in May; the Court not being adjourned to said time of trial, and no jury being drawn for said week

during which said trial took place, and that said trial was had at a time unauthorized by law."

To this ground of the motion, the Judge adds, by way of explanation and qualification, that during said intervening week, and previous to the trial, counsel for McAfee stated to the Court that whenever it would suit the convenience of the Court to try McAfee, he was ready, and that no objection to the time of trial was made at the time.

The Court refused to arrest the judgment, and defendant excepted.

Counsel also moved for a new trial of said case, on the following grounds:

1st. Because the Court permitted the State to prove that defendant had a quarrel or difficulty with Fuller and others on the same day of, and previous to, the stabbing—defendant objecting at the time and as before stated.

2d. Because the Court erred in permitting the witnesses to exculpate themselves, as before stated.

3d. Because the Court erred in the charge as given, and hereinbefore set forth.

4th. Because the Court was improperly holden, and the defendant was tried and convicted contrary to law.

5th. Because the verdict of the jury was contrary to law, and against the evidence, and decidedly against the weight and preponderance of the evidence, and without evidence to support it.

6th. Because of the newly discovered evidence of Lott Gordy, James Maloy and W. P. Hackney—whose testimony was unknown to defendant or his counsel until after the trial —by whom the defendant can prove:

"That when defendant, on the same day, and prior to the stabbing, went into the barber's shop to get shampooed, that James Fuller said to him, 'God damn you, if you will come out here, I'll shampoo you,' and that William O. Fincher said to Fuller, 'Jim, if you can't I can, God damn him;' that when defendant was told not to go out to where Fuller, the two Finchers, Johns and Carson Inman were with their sticks, that defendant replied that he had got out of their way two or three times that day, and that he could not be run over by a crowd of men; that a few minutes before the stabbing, William O. Fincher had a blade of a knife open in his left coat-pocket, and Hackney's attention was called to it

by Maloy, and Hackney told Johns to make Fincher shut up his knife."

This ground was supported by the affidavits of Gordy, Maloy, Hackney and the defendant.

The presiding Judge adds, that Gordy and Maloy both were subpœnaed in behalf of defendant, and were in attendance upon the Court, although the defendant's counsel stated that they had not conferred with either of the three witnesses, Gordy, Maloy or Hackney.

The Court overruled the motion for a new trial.

Error is assigned upon the decision of the Court, refusing to arrest the judgment, and refusing to grant the new trial, as moved for.

J. A. GLENN, for the plaintiff in error.

JOHNSON, Solicitor-General, by W. K. MOORE, for the defendant in error.

*By the Court.*—JENKINS, J., delivering the opinion.

After conviction, defendant's counsel moved in arrest of judgment, on the ground that, at the time of his trial, the Court was holden without authority of law, and its proceedings, therefore, void.

The statute prescribing the time for the sitting of the Superior Court in Whitfield county, provides that it shall be holden on the fourth Wednesday in April, and the first Monday in May, and on the fourth Monday in October, and first Monday in November of each year. By another statute it is provided that "the Judge of the Superior Court of Whitfield county is authorized, and required, to draw a panel of grand, and a panel of petit jurors for each week of Whitfield Superior Court, so long as the same shall continue, for the space of two weeks." In the present year, there were five Mondays in the month of April. The crowded state of the dockets indicated, as the result proved, that the business of the term could not be disposed of in two weeks, and the Judge, at the end of the first week, caused this entry to be made on the minutes: "The Court took a recess until next Monday morning, 10 o'clock."

The juries drawn and impanneled for the first week were

retained for the service of the week commencing with the fifth Monday in April.

The Court below overruled the motion, and counsel for defendant excepted.

One position assumed in support of this motion is, that the Court could not be holden during the week intermediate the weeks commencing on the fourth Monday in April, and the first Monday in May, because the law specifies only those two days. It is apparent that the same rigid, literal construction would limit each term of the Court to two days, with an intervening week. The language of the statute is, on the fourth Monday in April, and first Monday in May. If the Court, in those years wherein April has but *four* Mondays, may sit on all the days following Monday in the week wherein the fourth Monday occurs, why not in those wherein April has *five* Mondays, sit on all the judicial days intervening between the fourth Monday of April and the first of May? There is nothing in the statute prohibiting such a session, nor any express limitation of the entire term to two weeks. In the absence of such a limitation, or rather of any limitation, a Court, once regularly organized, may sit from day to day, or from week to week, until its business shall be accomplished. The Court was regularly and legally in session.

But it was argued, that if in session, it was without a jury legally constituted; because the week for which the first set of jurors was drawn and empanneled had expired. The law does not disqualify a juror from serving more than one week in that Court. It extends to him, at most, nothing more than a privilege of exemption after one week's service; but that being a personal privilege, may be waived, and in this case it was waived by all the jurors.

Besides the statement of defendant's counsel during that week, that the defendant was ready for trial whenever it suited the Court's convenience to try him, together with the omission to challenge the array, was a waiver of all exception on this ground.

Counsel moved for a new trial on sundry grounds, which having been refused, they excepted on each ground.

It is said the Court erred in permitting the prosecuting officer to give in evidence circumstances attending a previous difficulty between the parties, on the same day. Before this

was done, or attempted by the State, defendant had given evidence relative to that previous difficulty. The evidence offered by the State was to supply omissions touching that difficulty—to add omitted portions of the *res gestæ,* so as to render perfectly intelligible what the defendant had imperfectly brought to the cognizance of the jury. Upon his objection, the Court gave him the option of withdrawing what had been admitted, or submitting to have what he had omitted received. He did not withdraw, and the Court admitted the entire history. If a party put in evidence matter not pertinent or relative to the issue, he does so at the peril of having all put in by the other party that may be necessary to explain what he has thrust before the jury. It is on the same principle that a party's sayings may be evidence for himself if his adversary have proven a part of what he said in the same conversation.

Secondly. It is urged that the Court erred in permitting two of the witnesses to exculpate themselves. I am at a loss to understand from what they were supposed to exculpate themselves, unless it be from an imputation involved in defendant's effort to prove a conspiracy between those witnesses and the prosecutor, to do him some bodily harm; and in this view, it was but rebutting his evidence, and they were competent witnesses.

Thirdly. Exception is taken to the charge of the Court, as objected to on the motion for a new trial. We deem it unnecessary to review these objections in detail; they are numerous, and have been well considered. It is enough to say, we have carefully looked into the charge, and see nothing there of which defendant has cause to complain. It may be that, in speaking of a man's right to defend himself by using a knife or dirk against one who attempted to *"whip him with his fist,"* the Court too much restricted the right of self-defence; but *that* was not defendant's case. What his case was, we shall presently indicate, in considering another exception.

The fourth exception we have considered in disposing of the motion in arrest of judgment.

The fifth exception is, that the verdict is contrary to law and to the evidence, and decidedly against the weight of evidence.

The law governing the case prohibits a person from "stab-

bing another, except in his own defence, with a sword, dirk, knife," etc.

According to the evidence, these are the facts of defendant's case: One Fuller had run, or staggered against defendant, who pushed him off. Prosecutor standing by, and addressing Fuller, said, "Jim, do you take that?" or, "I would not take that," but said nothing to defendant. Defendant said to prosecutor, "Do you take it up?" Prosecutor—"I would as soon as not." Defendant (throwing off his coat), "Here's at you." The parties then simultaneously approached each other, and both struck about the same time—prosecutor with his fist (having no weapon at all, not even a cane), defendant from first to last striking with a knife, and inflicting upon prosecutor's person four or five stabs. Here was a distinct agreement to fight, defendant showing at least as much willingness as the other. Having *agreed* to fight, his first—his every blow inflicted a serious stab upon the person of an unarmed antagonist. This was not self-defence, in contemplation of law.

The law and the evidence both sustain the verdict of the jury.

The last exception is, to the refusal of the Court to grant a new trial, because of newly discovered evidence.

Numerous rulings of this Court, here cited, made it obligatory on the Court below to refuse a new trial on this ground, for the following reasons: Due diligence had not been used; two of the witnesses relied upon having been subpœnaed by defendant, and being in attendance; and the third testifying to the same facts as themselves. By interrogation of them, defendant or his counsel could have ascertained what they knew as well before as after the trial. The testimony was cumulative only, tending to prove a conspiracy against defendant, of which there was some testimony before the jury. It does not go to the extent of showing that the facts newly discovered had been communicated to the defendant before the stabbing. It would not probably, and, in the opinion of this Court, *should not,* have varied the result, had it been before the jury. *Roberts vs. The State, 3d Ga. R.* 322; *Monroe vs. The State,* 5th *Ga. R.* 85; *Giles vs. The State, 6th Ga. R.* 276; *Beard et al. vs. Simmon, 9th Ga. R.* 4; *Berry vs. The State,* 10th *Ga. R.* 511; *Carr vs. The State,* 14th *Ga. R.* 358; The prevalent practice of carrying deadly

weapons concealed about the person; the greater readiness to engage in fight, produced by their presence; the frequent, effusion of blood upon trivial provocations, and the frightful loss of life among us in this day, call for a stern enforcement of the criminal law.

## JUDGMENT.

Whereupon, it is considered and adjudged by the Court, that the judgment of the Court below be affirmed.