## 23786. HIX *v.* THE STATE.

DECIDED MARCH 29, 1934.

*Lee J. Langley,* for plaintiff in error.

*James F. Kelly, solicitor-general, J. Ralph Rosser,* contra.

MacIntyre, J.  The defendant, Grady Hix, was tried on a special presentment for assault with intent to murder upon Ben Scoggins, and was convicted of stabbing.  He moved for a new trial, which was denied, and he excepted. .

Ben Scoggins testified in part: "There was nobody with us when we went to the field.  I was so drunk that I did not know anything from that morning until after I was cut about nine o'clock that night, I don't know when I was cut.  When I came to myself Lincoln Chapman had Grady Hix down and took a knife away from him.  I was stabbed just above the heart and several other places, three on my right arm and one under my right shoulderblade.  My hand was cut.  I do not know whether I done anything to Grady Hix or not.  I had no weapon with me.  I was with Hix from eight or nine o'clock in the morning until nine or ten o'clock that night.  When I came to myself Lincoln Chapman was there with us and nobody else.  If I had had any difficulty with Hix during the day I do not know it."

Lincoln Chapman testified for the State in part: "I know about Ben Scoggins being cut April 22.  Mr. Hix there cut him.  We were all over in the field and were drinking a right smart, a dispute got up and they gave each other the lie.  I don't know which passed the lie first.  The dispute was between Ben and Grady.  They got up and Grady Hix opened his knife and says, 'Ben, you're a God damn lie,' and they run together that way [the witness illustrating], and I pushed them back, and so they run together again and the ground sloped off there down to the branch, and they locked up together into the branch."  "I did not see Scoggins do anything to Hix, if he did prior to the cutting.  The difficulty took place about nine or ten o'clock at night."  "They ran right together and all I saw was one lick with a knife.  Yes, it was dark.  They went into the branch.  Scoggins was on top of Hix.  I went into the branch also and would not say whether I had my foot on Hix's head or not; maybe I did.  I never knocked Hix in the head with a stick.  Scoggins did not call me and tell me that he dropped his knife and 'to knock the son of a bitch in the head.'  I did not say that

I hit him with a stick and that it was just like hitting a bull. I did not tell Hix's wife this. I had my foot on his head and was trying to drown him. I did not see but one knife. I did not hit Hix with a stick at all. . . All three of us were in the branch, Grady Hix was under the bottom. They went into the branch when they came together. Ben Scoggins was on top of Hix. When I was taking the knife away from Hix my foot was on his head. I was standing up. I caught his hand and put my foot on his head. The water was nearly up to my knees. I did what I did to get the knife away from him. I went over to the field where they were between sundown and dark. I was drinking whisky too. I don't know who used the damn lie first; they passed one apiece and started together. After I wrenched the knife out of Hix's hand I got up. Here's where my hand was cut. After it was all over I rolled Hix a cigarette and gave it to him."

Dr. R. M. Coulter testified for the State in part: "There were four cuts and six stabs, all on the front part of the body [of Ben Scoggins]. There were none on the back, they were on the lateral surface of the body, on the sides some of them."

Dr. S. B. Kitchens testified for the defendant in part: "I am assistant county physician. I was called to the jail to treat Grady Hix about April 22d. There was evidence that some violence had been done. He had evidence of a blow or a fall on the top of his head about an inch long. It was not cut through the scalp, but bled a little; his hand was scratched in three or four places and he bled a little from his forehead; just a little blood coming from over one eye. The wounds on his hands looked more like scratches than cuts. He was not badly injured, but had evidence of a lick or a fall on his head about an inch long." J. C. Keown testified for the defendant in part: "I am the sheriff of this county. We arrested Grady Hix the morning after this fight. Grady was bloody all over. His head was bloody, one hand was bloody all over, his shirt and his head was bloody. Blood was matted in his hair and I asked that the doctor be sent for. His clothes were wet and bloody. The defendant made the following statement: "Well, me and Ben Scoggins had a little falling out, so we got into a little argument, and Lincoln Chapman was there present, and we had a little tea, I guess some of you have been to tea parties; and me and Ben got into an argument, and I says 'Ben, I don't want any

trouble with you, we've been friends all our lives;' so the more I talked to him the worse he would curse me, and he went ahead and says, 'I can whip you in more ways than a damn farmer can whip a mule,' and I says, 'You'll have to have a fight before I believe it,' and he made at me then with a knife, and I knocked him down two or three times, and he cut me across there (the witness indicating on some part of himself), and across there and across the arm there, and I finally knocked the knife out of his hand, and he called to Lincoln Chapman, says, 'Lincoln I've dropped my knife, pick up a stick and knock the son of a bitch in the head;' and me and Lincoln had been good friends; so Lincoln picked up a stick and knocked me in the head with it, and me and Ben went into the branch, and, when I came to myself, Ben was on top of me and says 'God damn you, don't you believe I'm going to drown you;' and then Lincoln Chapman came in, and I don't deny cutting Ben Scoggins, but I never cut Ben till I went into the branch; and the next thing I remember they were gone, and when I came to myself that time I was in the branch there by myself. They thought they had me drowned I reckon, but I came to myself and got out of the water, and I saw a light coming on the other side and I says to myself I'd better lay down, and I laid down, I was so weak I couldn't go any further anyway, and they came back down there, and one of them says, 'if the God damn son of a bitch is there and aint dead, we'll just finish him and nobody will ever know it.' Now Ben Scoggins lets on like he was drunk and knew nothing about it. He was not drunker than any of the rest. I will admit this is my knife, and if it hadn't been for this knife I'd been in my grave, and Scoggins and Chapman would have been here today on trial instead of me. That is all I have to say."

There were other witnesses for the defendant, whose testimony was for the purpose of discrediting Chapman, a witness for the State. Of course, it was for the jury to determine what credit they should give the witness under all the facts and circumstances of this case, as disclosed by the evidence.

Our Supreme Court stated in *McAfee* v. *State*, 31 *Ga.* 411 (5), "Under an indictment for stabbing, if the evidence show that the prosecutor and defendant agreed to fight—the prosecutor being entirely unarmed, and the defendant commenced from the first to use a knife, stabbing the prosecutor at every blow—it is not a case of

self-defense, and a verdict of guilty is sustained by the law and the evidence." That court said also in *Floyd* v. *State, 36 Ga.* 91 (91 Am. D. 760) : "Unless there be great superiority in physical strength of an assailant who strikes another a blow with his fist, or ill-health in the assailed at the time, or other circumstance producing relatively great inequality between them in combat, the assailed can not justifiably resent the blow by stabbing the assailant." "The general rule is that whether the stabbing is in self-defense depends on the nature and violence of the assault made on him who stabs."

In the instant case the record is silent as to whether there was any great superiority in physical strength on the part of Scoggins over that possessed by the defendant, or whether the defendant was in ill-health at the time, or whether there were other circumstances existing at the time which produced relatively great inequality between them from sudden combat. Here there was a willingness to fight upon the part of both parties, and if the jury accepted the testimony of the State ("I did not see Scoggins do anything to Hix, if he did prior to the cutting") and believed the defendant was the aggressor, and in the combat he stabbed Scoggins, who was using only his fist in the encounter, they would be authorized to find that this was not self-defense in contemplation of law. In other words, on account of the weapon employed and the nature and violence of the assault, the jury were authorized to find that the assault was disproportioned to the provocation given, and that it did not excuse or justify the stabbing. We think the evidence authorized the verdict.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*